IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUSAN NIELSEN,

           Plaintiff,

vs.                                 Case No. 09-1352-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

           Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 28, 2009, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 11-20). Plaintiff alleges that she has been disabled since December 22, 2007 (R. at 11). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since December 22, 2007, the alleged onset date (R. at 13). At step two, the ALJ found that plaintiff had the following severe impairments: fibromyalgia and obesity (R. at 13). The ALJ further determined at step two that

4

plaintiff's mental impairments were non-severe (R. at 13-14). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 15), the ALJ found at step four that plaintiff is able to perform past relevant work (R. at 18). In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 19-20). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III. Did the ALJ err in his evaluation of plaintiff's mental impairment?**

At step two, the ALJ found that plaintiff's mental impairments do not cause more than a minimal limitation in the plaintiff's ability to perform basic work activities and were therefore non-severe (R. at 13). The ALJ noted the consultative report from Dr. Simmonds, a psychologist who, after one examination of the plaintiff on October 2, 2008, diagnosed plaintiff with generalized anxiety disorder and dysthymic disorder, and opined that plaintiff was "psychiatrically capable of meeting the demands of simple employment on a full-time basis" (R. at 337, 14). The ALJ then stated:

> In March of 2009, one month after requesting a hearing for disability, the claimant began treatment at Counseling and Meditation [sic] Services (Exhibit 24F). **There may be some significant limitation from her mental health**

5

> **condition. However, it is more likely than
> not that with treatment the claimant's mental
> health will improve in less than 12 months.
> Thus, her condition has not met the duration
> requirements of the Act.**

(R. at 14, emphasis added).

Plaintiff attended 15 therapy sessions from March 5, 2009 through June 11, 2009 with Michael Nichols, a licensed social worker (R. at 449-459). After six sessions, Mr. Nichols filled out a medical source statement-mental indicating that plaintiff was not significantly limited in 15 categories, was moderately limited in 4 categories and markedly limited in 1 category (R. at 403-404).[1] After fifteen sessions, Mr. Nichols filled out a second medical source statement-mental indicating that plaintiff was not significantly limited in 11 categories, was moderately limited in 7 categories, and markedly limited in 2 categories (R. at 460-461).[2] At the hearing, the vocational expert (VE)

---

[1] Mr. Nichols found that plaintiff was moderately limited in her ability to: (1) sustain an ordinary routine without special supervision, (2) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (3) travel in unfamiliar places or use public transportation, and (4) set realistic goals or make plans independently of others. Mr. Nichols also found that plaintiff was markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (R. at 403-404).

[2] Mr. Nichols found that plaintiff was moderately limited in the ability to: (1) maintain attention and concentration for extended periods, (2) work in coordination with or proximity to others without being distracted by them, (3) complete a normal workday and workweek without interruption from psychologically

6

testified that if plaintiff had the limitations contained in the assessments by Mr. Nichols, plaintiff would not be able to work (R. at 47).

In the ALJ's discussion in support of her RFC findings, the ALJ stated the following:

> As for the opinion evidence, the opinion of Mr. Michael Nichols, a licensed social worker and the claimant's current therapist, is given some weight (Exhibit 25F). However, a social worker is not considered a medical source pursuant to CFR 20 404.1513 & 416.913 and the Administrative Law Judge is not persuaded by this opinion. The treatment is in the beginning stages, the treatment notes do not support the level of function limitation check marked by Mr. Nichols on the form he used **and the claimant is expected to improve with continuing therapy and treatment**. Mr. Nichols stated the claimant's prognosis was good (Exhibit 24F).

(R. at 17, emphasis added).

Thus, the ALJ stated that although plaintiff may have some significant limitations from her mental impairments, it was more likely than not that with treatment plaintiff's mental health

---

based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (4) accept instructions and respond appropriately to criticism from supervisors, (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (6) respond appropriately to changes in the work setting, and (7) set realistic goals or make plans independently of others. Mr. Nichols found that plaintiff was markedly limited in the following categories: (1) in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (2) in the ability to travel in unfamiliar places or use public transportation (R. at 460-461).

will improve in less than 12 months.  Disability is defined as
the inability to do any substantial gainful activity by reason of
any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months.  20 C.F.R. § 404.1505(a).  However, the ALJ fails to cite
to any evidence in the record indicating that it is more likely
than not that with treatment plaintiff's mental health will
improve in less than 12 months.  Nothing in the treatment notes
of Mr. Nichols supports this assertion by the ALJ.[3]  On the other
hand, the ALJ failed to mention that the treatment notes include
the following:

>        Symptom Duration:  2 weeks      2 months      6 months
>                           1 year       2 years       chronic

(R. at 459).  Mr. Nichols marked "chronic" for symptom duration.
This clearly does not support the ALJ's assertions set forth
above, and would indicate that plaintiff's mental limitations
would last more than 12 months according to Mr. Nichols.

    The ALJ also indicated that Mr. Nichols, a licensed social
worker and a therapist, is not a medical source pursuant to 20
C.F.R. §§ 404.1513 and 416.913 (R. at 17).  This assertion is
clearly erroneous.  The term "medical sources" refers to both
"acceptable medical sources" and other health care providers who

---

[3]Defendant's brief also fails to cite to any evidence in
support of this assertion by the ALJ.

are not "acceptable medical sources." SSR 06-03p, 2006 WL 2329939 at *1. "Acceptable medical sources" include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a)(1)-(2); 20 C.F.R. § 404.1502. Evidence is needed from an "acceptable medical source" indicating that a claimant has a medically determinable impairment. 20 C.F.R. 404.1513(a).[4]

Neither a licensed clinical social worker nor a therapist is an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1513(a). However, evidence from "other medical sources," including social workers and therapists, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function. Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals. However, depending on the particular facts in a

---

[4]The ALJ previously noted that Dr. Simmonds, a psychologist, diagnosed plaintiff with generalized anxiety disorder and dysthymic disorder (R. at 337, 14). Thus, there is evidence from an acceptable medical source that plaintiff has mental impairments.

9

case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. SSR 06-03p, 2006 WL 2329939 at **2,3,5.

The ALJ clearly erred by stating that Mr. Nichols, a social worker/therapist, was not a medical source. He is an "other" medical source whose opinions should be considered when determining the severity of a claimant's impairment, and the effect of the impairment on a claimant's ability to work. Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003). Given this erroneous assertion by the ALJ, it does not appear that the ALJ weighed the opinions of Mr. Nichols, plaintiff's treating therapist, in accordance with the requirements of SSR 06-03p.

Furthermore, the court is concerned with the fact that although the ALJ stated that the treatment is in the "beginning stages" (R. at 17), the ALJ failed to mention that the treatment records indicate that plaintiff had 15 treatment sessions with Mr. Nichols from March 5, 2009 through June 11, 2009 (R. at 449-459). The frequency of treatment is a factor to be considered when evaluating the opinions of a medical source. SSR 06-03p, 2006 WL 2329939 at *3. The opinions of Mr. Nichols must be considered in light of the 15 treatment sessions, as compared to the one examination session by Dr. Simmonds, or the opinions of

10

medical sources who never examined the plaintiff.  A treatment provider's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

The ALJ also stated that the treatment notes do not support the level of functional limitations set forth by Mr. Nichols (R. at 17).  However, a review of the treatment notes, which are handwritten and only partially legible, do not appear to directly address plaintiff's limitations.  Thus, the treatment notes do not appear to either support or not support the level of functional limitations set forth by Mr. Nichols.  See Shontos, 328 F.3d at 426-427)(the ALJ's assertion that the medical source's opinions were inconsistent with the record, and therefore should not be afforded controlling or great weight, is not borne out by the record.  At most, the record is deficient in documentation to support their opinions).

In light of the above errors by the ALJ in his consideration of plaintiff's mental impairment, the court finds that substantial evidence does not support the finding of the ALJ that she is not disabled.  This case shall therefore be remanded for proper consideration of the evidence of plaintiff's mental impairments, and its impact on her ability to work.

**IV. Did the ALJ err in his consideration of the opinions of Dr. Abang, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical

12

sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely,

13

he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The ALJ provided the following explanation for the weight he accorded to the opinions of Dr. Abang:

> The opinion of Sarah Abang, M.D., (Exhibit 23F) a resident at the Wesley Family Clinic, who is technically a treating source and one of the doctors at the clinic who has seen the claimant, is given moderate but not heavy weight because neither the longitudinal record nor the Wesley Family Clinic notes support the most severe limitations check-marked on the form by Dr. Abang. Although the evidence supports a lifting limit of 10 pounds and the notation that sitting limitations cannot be evaluated, the record does not support that the claimant can stand for less than 1 hour in an 8 hour work day or that the claimant needs to lie down every hour during the day. The claimant's own statements are inconsistent with those limitations. The claimant testified that she did would sometimes lie down during her "bad days." However, she never alleged she needed to lie down every hour. Additionally, the claimant's activities of daily living are not consistent with the need to lie down every hour. Further more, the most recent treatment notes from the Wesley Clinic show that Dr. Abang informed the claimant her anxiety, sleeplessness and pain cycle were out of Dr. Abang's realm of expertise and that the claimant should be seen psychiatrically. Dr. Abang further noted that the claimant has stopped going for mental health treatment because she did not find their advice helpful. Dr. Abang also told the claimant that the combination of medication she was taking, at the dose she was taking was not good. The notes from Dr. Abang show that she documented the claimant reported "418" multiple concerns that appears to be a sign of Dr. Abang's sense of the claimant's exaggeration. The treatment at the Wesley

> clinic began fairly recently after changing
> from the first doctor (Terry D.
> Klein, M.D.) the claimant began seeing in
> Wichita after her move. Therefore, Dr.
> Abang's opinion is regarding specific
> functional limitation is accorded less than
> controlling weight.

(R. at 17-18).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The ALJ found that the record did not support Dr. Abang's opinion that plaintiff can stand/walk for less than 1 hour in an 8 hour workday. In fact, plaintiff testified that she could stand for a total of 1-2 hours in an 8 hour workday (R. at 31-32). The ALJ therefore had a legitimate basis in the record for discounting this limitation by Dr. Abang and for finding that plaintiff could stand and/or walk for 2 hours in an 8 hour workday.

The ALJ also stated that the record did not support Dr. Abang's opinion that plaintiff needed to lie down every hour during an 8 hour workday. The ALJ asserted that plaintiff's own statements are inconsistent with this limitation. The ALJ noted that plaintiff testified that she did sometimes lie down during her "bad days." However, the ALJ asserted that she never alleged that she needed to lie down every hour. A review of the record indicates that plaintiff testified that she has bad days for 4

15

days in a week.  On a bad day, plaintiff indicated that she would get up and drive her son to work, would then crawl back in bed for the rest of the day, then get up and pick her son up from work, and then crawl back to bed for the rest of the night; thus, she is in bed most of the day (R. at 32-33).  Thus, contrary to the ALJ's assertion, plaintiff did in fact testify that she lies down for most of the day for 4 days out of 7.  The court therefore finds that plaintiff's testimony is not clearly inconsistent with Dr. Abang's opinion that plaintiff needs to lie down every hour.  Furthermore, plaintiff's mother stated that plaintiff spends most of the day on the couch or in bed because of pain (R. at 207).

    The ALJ also stated that the treatment records showed that Dr. Abang informed the plaintiff that her anxiety, sleeplessness and pain cycle were out of Dr. Abang's realm of expertise, and the plaintiff should be seen psychiatrically.  However, the record actually indicates that Dr. Abang stated that the combination of her anxiety, depression, and insomnia were out of her realm of her expertise and that she needs to see a psychiatrist (R. at 431).  Thus, Dr. Abang did not state that plaintiff's pain cycle was out of his realm of expertise.  In fact, Dr. Abang opined that plaintiff needed to lie down or recline every hour due to pain (R. at 428).  For these reasons, on remand, the ALJ shall reconsider the opinions of Dr. Abang in

16

light of all the evidence, including the testimony of the plaintiff.

In his decision, the ALJ stated that his RFC findings were "consistent" with the state agency physical RFC assessment (R. at 18). It is true that the ALJ's RFC findings are consistent with the state agency assessment (R. at 15, 376-383). In the case of Daniell v. Astrue, 2010 WL 2588174 (10th Cir. June 29, 2010), the ALJ explained that his RFC findings were "consistent" with the opinions of the state agency medical consultant. The court noted that when a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The court in Daniell stated that the medical consultant provided an assessment with checked boxes on a form and did not give specific reasons for the functional limitations assessed by the medical consultant. The court found that the ALJ erred because he did not explain why the opinion of the non-examining medical consultant should be given more weight than the treating physicians.

In this case, the ALJ, as in Daniell, simply stated that his RFC findings were "consistent" with the opinions of the non-examining medical consultant. However, the ALJ did not explain

17

why the opinions of the medical consultant should be given more weight than the opinions of plaintiff's treating physician.  As in Daniell, although the consultant provided some narrative summary of the medical evidence on his form (R. at 383), he did not give specific reasons for the functional limitations he assessed.  Furthermore, as noted above, substantial evidence did not support the ALJ's reasons for discounting some of the opinions of Dr. Abang, plaintiff's treating physician.  Thus, the ALJ erred in rejecting some of the opinions of Dr. Abang in favor of the opinions of a non-examining medical consultant without providing a legally sufficient explanation for doing so.  See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Daniell, 2010 WL 2588174 at *5.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 8th day of November, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge